IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

AMERICAN HEARTLAND PORT, INC.,
JO LYNN KRAINA, SHELLEY REED
and MISTY SHANNON,

    Plaintiffs,

v.                                  Civil Action No. 5:11CV50
                                                  (STAMP)

AMERICAN PORT HOLDINGS, INC.,
a Delaware corporation,
DANIEL L. DICKERSON, ANDREW S. FELLOWS,
STANLEY BALLAS, JAMES MARTODAM and
JAMES C. BRECKINRIDGE, individually,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION TO AMEND THE COMPLAINT**

I.    Background

On March 25, 2011, the plaintiffs, American Heartland Port, Inc. ("American Heartland"), Jo Lynn Kraina, Shelley Reed, and Misty Shannon, brought this claim against the above-named defendants alleging claims of fraud and misrepresentation, breach of contract, equitable estoppel, misappropriation of corporate assets, unjust enrichment, breach of fiduciary duties as to all individually named defendants, legal malpractice and breach of fiduciary duty by defendant James Breckinridge, and interference with business opportunities and prospective advantage. As relief, the plaintiffs sought compensatory damages in excess of $75,000.00, disgorgement of any unjust enrichment, punitive damages, and attorney's fees.

After the parties filed their meeting report and proposed discovery plan, this Court then entered an initial scheduling order. This scheduling order was thereafter amended as a result of discovery issues and this Court set this case for trial to commence on October 30, 2012. The parties did not file dispositive motions in this action prior to the trial date. Before trial, however, the parties did file motions in limine and other trial related documents. On the day before trial, the parties notified this Court that they had reached a tentative settlement, but indicated that such settlement still needed finalized, and requested that they be given six months to do so. Therefore, based on this notification, this Court entered an order staying the proceedings until April 29, 2013.

On April 3, 2013, the plaintiffs filed a motion seeking this Court's acknowledgment that the tentative settlement was withdrawn and void as of April 29, 2013, and requesting that this Court require the defendants to supplement discovery and provide the plaintiffs with a report concerning the status of the settlement. This Court, after holding a status conference concerning the plaintiffs' motion, directed the parties to meet and confer about a possible discovery plan and protective order regarding discovery. The parties then filed a proposed 60-day discovery plan and stipulated protective order, which this Court approved.

After the expiration of the discovery plan, this Court held a status and scheduling conference. During this conference, the plaintiffs indicated that they may file a motion to amend the complaint based on what they discovered during the 60-day discovery plan. After the conference, this Court entered an amended scheduling order, which allowed for additional time for the plaintiffs to submit a motion to amend the complaint. The plaintiffs submitted their motion to amend on September 10, 2013. Through this motion, the plaintiffs seek to add additional parties and additional claims to their original complaint. Specifically, as to Count II, which is the plaintiffs' breach of contract claim, the plaintiffs seek to add as a party McGladrey, LLP.[1] As to Count IV, which alleges misappropriation of corporate assets and Count V, which alleges unjust enrichment, they seek to add Patrick DiCarlo ("DiCarlo"), Allied Investment Partners PJSC ("AIP"), and ArcelorMittal Weirton, LLC ("ArcelorMittal") as parties. As to Count VI, which alleges breach of fiduciary duties, the plaintiffs seek to add DiCarlo and AIP as parties. The plaintiffs then seek to include in Count VIII, which is their claim for tortious interference, events and allegations surrounding the October 29, 2012 tentative settlement that they believe support their tortious

---

[1]The plaintiffs stated that if this Court grants the plaintiffs' motion to amend the complaint, they would withdraw the claim against McGladrey, LLP. Therefore, because the plaintiffs seek to withdraw this claim, the motion to amend to add a claim against McGladrey, LLP is moot.

3

interference claim.[2] The plaintiffs then seek to add an additional three claims to the complaint. The first claim the plaintiffs seek to add is a claim against the original defendants for violation of the doctrine of good faith and fair dealing in working with others to sabotage the settlement agreement. The second claim is a claim against the original defendants, DiCarlo, ArcelorMittal, and Dale Papajcik ("Papajcik") for liability based on the West Virginia Uniform Fraudulent Transfers Act ("WVUFTA"), or under a theory of accomplice liability. The last claim the plaintiffs seek to add is a claim for breach of the duty of loyalty by DiCarlo and the original defendants.

This Court held a status conference after the plaintiffs filed their amended complaint, where it set up a briefing schedule for the motion to amend, and amended the scheduling order so as to allow additional time for discovery and other matters in the event the motion to amend was granted. Thereafter, the original defendants and ArcelorMittal filed responses to the plaintiffs' motion to amend. The original defendants argue that the plaintiffs' proposed amendments are unduly delayed and will unduly prejudice the defendants. ArcelorMittal argues that the timing and

---

[2]Plaintiffs acknowledge that while asserting in the headnote of Count VIII that this claim was against the original defendants, they also made allegations against ArcelorMittal, Papajcik, DiCarlo, and AIP within Count VIII, and state that it was an inadvertent omission that these parties were not included in the headnote.

circumstances do not demonstrate that justice requires leave to amend. Further, ArcelorMittal argues that any claim against ArcelorMittal or its counsel, Papajcik, would be futile and claims against Papajcik would divest this Court of subject matter jurisdiction.

The plaintiffs replied contesting the arguments made by both the original defendants and ArcelorMittal. The plaintiffs, however, recognized that they inadvertently did not include ArcelorMittal or Papajcik in the headnote of Count VIII and ArcelorMittal had not addressed Count VIII in its response in opposition to the motion to amend. Therefore, the plaintiffs stated that they did not object to ArcelorMittal supplementing their opposition. ArcelorMittal did thereafter file a sur-reply stating that Count VIII did not state a claim against ArcelorMittal or Papajcik. Further, ArcelorMittal again argued that the proposed addition of Papajcik as a defendant would destroy this Court's subject matter jurisdiction.

For the reasons stated below, this Court grants the plaintiffs' motion to amend in part, and denies the motion to amend in part. Specifically, this Court grants the motion to amend as to all additional counts, other than Counts IV and V and grants the motion to amend as to all additional parties other than Papajcik.

## II. Applicable Law

Federal Rule of Civil Procedure 15(a)(1) states, in pertinent part, that "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) . . . whichever is earlier." If a party seeks to amend its pleadings in all other cases, it may only do so "with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Rule 15(a) grants the district court broad discretion concerning motions to amend pleadings, and leave should be granted absent some reason "such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Ward Elec. Serv. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987); Gladhill v. Gen. Motors Corp., 743 F.2d 1049, 1052 (4th Cir. 1984).

## III. Discussion

As stated above, both the original defendants and ArcelorMittal filed responses in opposition to the motion to amend the complaint. As a result, this Court will address each response separately.

A.  <u>Original defendants' response in opposition</u>

The original defendants first argue that the plaintiffs have known more than half of the allegations for and during the last four years.  Therefore, the original defendants argue that the motion to amend has been unduly delayed as to these allegations.  Further, the original defendants argue that the amended allegations will unduly prejudice both the original defendants and the new defendants, who are more than four years out from the facts underlying the allegations.  Specifically, they argue that this drawn out litigation will add stress to the defendants, increase their financial burden, and harm their reputations.

This Court, however, finds that even if the plaintiffs have known about some of the allegations during the past four years, and thus, have delayed in making the motion to amend, the original defendants are not prejudiced by the plaintiffs now amending their complaint.  As the United States Court of Appeals for the Fourth Circuit has stated, "[d]elay alone, without prejudice, does not support the denial of a motion for leave to amend." <u>Deasy v. Hill</u>, 833 F.2d 38, 41 (4th Cir. 1987) (citations omitted).  The subject matter of these allegations is similar to that of the original allegations.  The original defendants assert that this increased litigation will be more costly, and will do further harm to their reputations.  The original defendants, however, have not explained specifically how this litigation will become more costly for them.

7

Further, this Court does not find that the argument concerning the original defendants' reputations constitutes a basis for this Court to deny the motion to amend. This Court only minimally extended the scheduling order in the event that this motion to amend was granted, and neither party has indicated that they believe more time will be needed for discovery of other matters prior to the current trial date. Therefore, any additional harm to the original defendants' reputation is minimal, and not prejudicial.

The original defendants next argue that the plaintiffs' allegations concerning the events surrounding the tentative settlement are not sufficient to establish new claims against the original defendants or any other party. The original defendants claim that these allegations are false, absurd, without merit, and are meant to strong-arm defendants by extending litigation into the unforeseeable future. This Court, however, finds that now is not the proper juncture to judge the merits of the plaintiffs' allegations. Therefore, this Court cannot deny the plaintiffs' motion to amend based on this argument.

B.  ArcelorMittal's response in opposition

    1.  Interests of justice and tortious interference claim (Count VIII)

ArcelorMittal first argues that the interests of justice do not support leave to amend. In support of this argument, ArcelorMittal states that the complaint fails to identify any misconduct by either it or its counsel, Papajcik. Instead,

ArcelorMittal argues that the allegations against them are combined into sweeping and conclusory allegations with the original defendants. ArcelorMittal also argues that after two and a half years of not amending their complaint, it seems that the plaintiffs are only adding additional defendants after it became clear that the original defendants would lack the funds to pay their contingent settlement obligations to the plaintiffs. Therefore, ArcelorMittal states that neither the timing nor the circumstances of the plaintiffs' proposed amended complaint demonstrate that justice requires this Court to grant the plaintiffs leave to amend.

The plaintiffs respond to this argument by stating that they did allege several counts of misconduct against these defendants, including that they engaged in tortious interference with the plaintiffs' prospective advantage and business relationship with respect to the tentative settlement the plaintiffs negotiated with the original defendants. The plaintiffs state that while the settlement had contingencies, it constituted a prospective business advantage or relationship at least as to the parties involved of working in good faith to meet those contingencies. ArcelorMittal responded to this argument in its sur-reply, by stating that the plaintiffs failed to state a plausible claim for tortious interference against ArcelorMittal or Papajcik.

The Fourth Circuit has held that a court is justified in denying a motion to amend the complaint as futile when the amended

9

complaint could not survive a motion to dismiss for failure to state a claim. Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995) (citations omitted). Under West Virginia law, to establish a prima facie case of tortious interference, a plaintiff must prove the following elements: "(1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Syl. Pt. 2, Torbett v. Wheeling Dollar Savs. & Trust Co., 314 S.E.2d 166 (W. Va. 1983).

Contrary to ArcelorMittal's contention, this Court finds that the plaintiffs' complaint contains sufficient allegations to state a claim against ArcelorMittal and Papajcik for tortious interference under Count VIII. As to the first element, the plaintiffs indicate that the contractual expectancy in question is the tentative settlement with the original defendants. The plaintiffs then assert that ArcelorMittal and Papajcik, along with other defendants, colluded to interfere with the expectancy by dealing among themselves to cause the original defendants to give up all of their rights and interest in the subject property and to divert control of the subject project from local developers to foreign nationals. This Court finds that such allegations are sufficient to satisfy the third and fourth elements of a claim for tortious interference. The plaintiffs further state that as a

10

result of this interferences, the plaintiffs lost the expectancy of receiving monies from the settlement, which is sufficient to satisfy the fourth element of the claim. Therefore, because the complaint contains sufficient allegations to state a claim for tortious interference as to ArcelorMittal and Papajcik, this Court cannot deny the plaintiffs' motion to amend for a failure to state a claim.

Further, this Court finds that ArcelorMittal's argument that the interests of justice do not support leave to amend is without merit. This Court declines to engage in speculation as to why the plaintiffs waited two years to bring the claims against it and Papajcik and, therefore, this Court declines to take up ArcelorMittal's argument as to the plaintiffs' motives and whether such motives support their leave to amend.

2. <u>Misappropriation (Count IV) and unjust enrichment claims (Count V)</u>

ArcelorMittal next argues that the plaintiffs' claims against it for misappropriation and unjust enrichment are preempted by West Virginia's enactment of the Uniform Trade Secrets Act ("WVUTSA") and, thus, the motion to amend as to these claims should be denied as futile. Specifically, ArcelorMittal argues that because both of these claims are premised on the notion that ArcelorMittal used plaintiffs' allegedly "confidential and proprietary" information, the claims are barred by West Virginia's enactment of an express statutory framework for the protection of purportedly proprietary

11

information.  The plaintiffs, however, respond by arguing that the WVUTSA does not preempt their common law claims for misappropriation and unjust enrichment.

The WVUTSA provides the statutory framework for a party to bring a claim for the misappropriation of trade secrets.  See W. Va. Code § 47-22 et. seq.  In this statutory framework, there is a preemption provision which states that this framework "displaces conflicting tort, restitutionary and other law of this state providing civil remedies for misappropriation of a trade secret." W. Va. Code § 47-22-7(a).  As the parties note, the West Virginia Supreme Court has not spoken to whether this preemption provision "abolish[es] all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status (e.g. idea misappropriation, information piracy, theft of commercial information, etc.)."  Hauck Mfg. Co. v. Astec Indus., Inc., 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004) (citations omitted).  The statutory framework itself, however, does state that it should "be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of [the] act among states enacting it."  W. Va. Code § 47-22-8.

As the court in Hauck stated, most courts have generally interpreted the preemption provision of the Uniform Trade Secrets Act to abolish the alternative causes of action for the theft or

12

misuse of information that falls short of trade secret status. See Hauck, 375 F. Supp. at 655 (citing cases from various state and federal courts applying the preemption provision). The plaintiffs argue that because West Virginia disfavors preemption in general, this Court should not follow the majority view, but instead follow the view that "a tort is not preempted unless it mimics misappropriation exactly — unless it involves no act beyond that of misappropriation itself." Unisource Worldwide, Inc. v. Swope, No. CV-12-02036-PHX-NVW, 2013 WL 4029170 at *4 (D. Ariz. Aug. 8, 2013). The plaintiffs, however, fail to take into account the WVUTSA's provision that states that it should be construed to effectuate its purpose of making the law uniform among the states as to this subject. After reviewing the case law from the various state and federal courts discussing the preemption provision, and taking into account the aforementioned directive, this Court finds that the West Virginia Supreme Court would most likely agree with and enforce the majority view.

As this Court has now determined that claims based on the misappropriation of confidential and proprietary information are preempted by the WVUTSA, this Court finds that the plaintiffs' common law claims involving the misappropriation of such information are futile. As such, this Court cannot grant the plaintiffs' motion to amend as to Count IV, which is plaintiffs' claim for the misappropriation of corporate assets. The plaintiffs

define such corporate assets as "confidential and proprietary information, property, work product, research, and contractual rights." While not defined as trade secrets under the majority view, even a common law claim concerning such information that falls short of being a trade secret is preempted by the WVUTSA.

Further, Count V of the plaintiffs' complaint, which is the plaintiffs' claim concerning unjust enrichment, is based on the defendants' receipt and use of confidential and proprietary information, original ideas, business plans, and contacts. As stated above, the preemption provision provides that the WVUTSA "displaces conflicting tort, restitutionary and other law of this state providing civil remedies for misappropriation of a trade secret." W. Va. Code § 47-22-7. Thus, it is not only claims for misappropriation that are preempted but also claims that seek remedies for such misappropriation. The plaintiffs attempt to state a claim for unjust enrichment which seeks a remedy for the misappropriation of certain information. While "confidential and proprietary information, original ideas, business plans, and contracts" may fall short of being considered trade secrets, as explained above, the preemption provision still applies to such claims. See Hauck, 375 F.3d at 661-662 (applying the preemption provision to plaintiff's claim for unjust enrichment based on the plaintiff's allegation that the defendants unjustly received certain information and benefitted from such information without

compensating the plaintiff). Therefore, this Court cannot grant the plaintiffs' motion to amend as to Count V.

The plaintiffs do argue that in the event that this Court determines that the common law claims are preempted, that it should allow the plaintiffs the right to amend the complaint to set out a claim under the WVUTSA if they believe one can be reasonably maintained. ArcelorMittal argues that such amendment would be futile as well. This Court, however, cannot judge the futility of an amendment without having seen such proposed amendment. This Court, however, finds that any such amendment would be unduly delayed, and will prejudice the original defendants and ArcelorMittal in having to respond to yet another motion to amend the complaint after the time for such amendment under the scheduling order passed. Therefore, this Court cannot grant the plaintiffs' request to file another motion to amend.

    3.    <u>Uniform Fraudulent Transfers Act (Count X)</u>

ArcelorMittal next argues that Count X of the complaint, which alleges violations under the WVUFTA, is futile as the claim is moot and not justiciable.[3] ArcelorMittal claims that the defendant American Port Holdings, Inc.'s ("APH") purchase rights were never actually assigned and APH's purchase rights have since been

---

[3]This Court recognizes that ArcelorMittal also argues that Count X is futile as to Papajcik for a separate independent reason. This Court, however, need not address such argument because as explained more fully below, this Court is not granting the plaintiffs' motion to amend to add Papajcik as an additional party.

15

terminated.  Therefore, ArcelorMittal asserts that the plaintiffs' attempt to avoid a contractual consent to an assignment that did not happen and cannot in the future happen is an abstract and moot question.  In response, the plaintiffs seem to argue that the original defendants did provide ArcelorMittal with a release of all claims along with an assignment prior to the contract being terminated.

In determining whether to grant a motion to amend a complaint, this Court must consider whether the motion is unduly delayed, made in bad faith or with dilatory motive, whether the amendments would prejudice the nonmoving party, and whether the amendment would be futile.  Foman, 371 U.S. at 182.  None of these considerations involve this Court making determinations regarding factual disputes, and this Court finds that it is not proper to make such determinations at this stage in the litigation.  Therefore, the plaintiffs' motion to amend Count X is granted, as this Court cannot deny such motion based merely on a factual dispute that may or may not make the plaintiffs' WVUFTA claim moot.

4. Subject matter jurisdiction

ArcelorMittal's last argument in opposition to the plaintiffs' motion to amend, concerns this Court's subject matter jurisdiction. ArcelorMittal argues that if Papajcik is added as a defendant in this action, his addition would destroy diversity of citizenship and therefore, divest this Court of subject matter jurisdiction.

The plaintiffs in response argue that even if this Court did not have jurisdiction over claims against Papajcik under diversity jurisdiction, it may still entertain such claims under supplemental jurisdiction. The plaintiffs then state, however, that if this Court believes that adding Papajcik would divest it of jurisdiction, plaintiffs will not be prejudiced by proceeding against ArcelorMittal without Papajcik. ArcelorMittal responded to the plaintiffs' argument regarding supplemental jurisdiction in its sur-reply, wherein it argued that the plaintiffs are incorrect concerning this Court's ability to exercise supplemental jurisdiction. Specifically, ArcelorMittal argues that the supplemental jurisdiction statute actually prevents this Court from exercising supplemental jurisdiction over the claims against Papajcik.

Whether or not a court may exercise supplemental jurisdiction over an additional claim or party is governed by the supplemental jurisdiction statute, 28 U.S.C. § 1367. As the Fourth Circuit has stated, the statute is "broadly phrased to provide for supplemental jurisdiction over claims appended to 'any civil action' over with the court has 'original jurisdiction.'" Shanghan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1995) (quoting 28 U.S.C. § 1367). Section 1367(b), however, limits the use of supplemental jurisdiction in diversity cases "in order to prevent the addition of parties that would destroy complete diversity as required by § 1332." Id.

17

Specifically, § 1337(b) prevents courts from exercising supplemental jurisdiction over those "persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b).

The plaintiffs are proposing to join Papajcik as a party to this case, which would require that he be joined pursuant to either Rule 19 or 20 of the Federal Rules of Civil Procedure. See Adkins v. Labor Ready, Inc., 205 F.R.D. 460, 462 (S.D. W. Va. 2001) ("In order to amend a complaint to add additional parties after a responsive pleading has been filed, a movant must seek leave of the court pursuant to Rule 15 of the Federal Rules of Civil Procedure, and he must demonstrate compliance with either Rule 19 or Rule 20, the procedural rules pertaining to joinder of parties.") According to the proposed amended complaint, Papajcik is a resident of Ohio, and plaintiff Shannon is also a resident of Ohio. Thus, by the addition of Papajcik under either Rule 19 or 20, complete diversity is destroyed. Accordingly, this Court's supplemental jurisdiction cannot extend to Papajcik based on § 1367(b). This Court, therefore, cannot grant the plaintiffs' motion to amend the complaint insomuch as it seeks the addition of Papajcik, as this

18

Court does not have jurisdiction to hear such claims made against him.

## IV. Conclusion

For the reasons stated above, this Court GRANTS IN PART and DENIES IN PART plaintiffs' motion to amend the complaint (ECF No. 218). Specifically, this Court grants the motion to amend as to all additional counts, other than Counts IV and V, and grants the motion to amend as to all additional parties other than Papajcik. The plaintiffs are DIRECTED to file an amended complaint that complies with the above findings. Further, the plaintiffs are DIRECTED to obtain appropriate service of process of the amended complaint upon the newly joined defendants pursuant to the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    October 9, 2013

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE