IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

AMERICAN HEARTLAND PORT, INC.,
JO LYNN KRAINA, SHELLEY REED
and MISTY SHANNON,

    Plaintiffs,

v.                                        Civil Action No. 5:11CV50
                                                  (STAMP)

AMERICAN PORT HOLDINGS, INC.,
a Delaware corporation,
DANIEL L. DICKERSON, ANDREW S. FELLOWS,
STANLEY BALLAS, JAMES MARTODAM and
JAMES C. BRECKINRIDGE, individually,
PATRICK NICHOLAS DICARLO, an individual,
CHANNEL POINT PARTNERS, a corporation,
ALLIED INVESTMENT PARTNERS PJSC,
a foreign corporation and
ARCELORMITTAL WEIRTON, LLC, a corporation,

    Defendants.

**MEMORANDUM OPINION AND ORDER
CONFIRMING THE PRONOUNCED ORDER OF THIS COURT
RELATING TO THE PARTIES' MOTIONS IN LIMINE**

    Pending before this Court are certain motions in limine filed by the plaintiffs, American Heartland Port, Inc. ("American Heartland"), Jo Lynn Kraina ("Kraina"), Shelley Reed, and Misty Shannon, the original defendants, Daniel Dickerson, Andrew S. Fellows, Stanley Ballas, James Martodam, James C. Breckinridge, and American Port Holdings (hereinafter "original defendants"), and ArcelorMittal Weirton, LLC ("ArcelorMittal). This Court has reviewed these separate motions and makes the following findings concerning the motions in limine:

1. <u>Plaintiff's Motion in Limine to Exclude Character Evidence Regarding Plaintiff Kraina</u> (ECF No. 382) -- GRANTED IN PART AND DEFERRED IN PART.

The plaintiffs filed a motion in limine seeking to exclude certain character evidence concerning plaintiff Kraina. Specifically, the plaintiffs wish to exclude any evidence or reference to in opening statement or argument that plaintiff Kraina is unstable based on her religion, any reference concerning her views on immigration and/or Muslims, any reference concerning her religious or political beliefs, and any reference concerning her financial wherewithal. The plaintiffs assert that this evidence should be precluded based on Rules 610, 402, and 403 of the Federal Rules of Evidence. The original defendants, however, assert that they do not intend to use evidence of Kraina's religious, political, and financial statements as character evidence, and they will not use evidence of Kraina's religious beliefs or opinions to attack her credibility. Instead, they assert that Kraina's religious statements are admissible to show her interest, bias, and motive in moving the port project forward and to show the reason why the original defendant elected to terminate their working relationship with her.

First, this Court finds that any evidence concerning Kraina's religiosity is barred under Rule 610 and this includes Kraina's views concerning Muslims. Rule 610 states, "Evidence of a witness's religious beliefs or opinions is not admissible to attack

or support the witness's credibility." While the original defendants argue that they are not offering such evidence to attack her credibility, this Court finds such assertion to be without merit. Further, even if the original defendants were offering it for another purpose, this Court finds such evidence inadmissible pursuant to Rules 402 and 403 of the Federal Rules of Evidence. As to Rule 402, such Rule provides that "[i]rrelevant evidence is not admissible." Evidence is defined as relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." The original defendants have not explained how Kraina's alleged interest, bias, and motive concerning the port project makes any fact of consequence more or less probable. Nor have the original defendants explained why the reason they terminated their relationship with Kraina makes any fact of consequence more or less probable.

Even if such evidence was relevant, however, such evidence is excludable under Rule 403. Rule 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The evidence referencing Kraina's religious beliefs and religiosity in general has the potential to create unfair prejudice with members of the jury. Accordingly, such evidence is excluded.

As to any evidence referencing Kraina's views on immigration and her political beliefs, such evidence is excluded pursuant to Rule 402 and Rule 403 for the same reasons as outlined above concerning Kraina's religious beliefs. This Court finds such evidence to be irrelevant to any fact of consequence in this matter, and further even if it were relevant, such evidence is of the kind that has the potential to create unfair prejudice with the members of the jury.

This Court, however, defers ruling on the admissibility of any statements made about Kraina's financial state. This Court believes that such admissibility will be better determined at trial where this Court will be in a position to better understand the context in which such statements may be offered.

2. <u>Original Defendants' Motion in Limine to Exclude Evidence of Tentative Settlement Agreement</u> (ECF No. 378) -- WITHDRAWN

3. <u>Original Defendants' Motion in Limine to Exclude Evidence of Hearsay Statements, Emails and Documents</u> (ECF No. 379) -- WITHDRAWN

4. <u>Original Defendants' Reasserted Motions in Limine</u>: (ECF No. 380)

    a. <u>Motion in Limine to Exclude Evidence that Defendant Breckinridge Acted Unethically</u> (ECF No. 119) -- WITHDRAWN

    b. <u>Motion in Limine to Exclude Evidence that Pastor Smith Breached the Clergy-Penitent Privilege or Acted Unethically</u> (ECF No. 120) -- WITHDRAWN

c. <u>Motion in Limine to Exclude Evidence of RSM McGladrey Billing Error</u> (ECF No. 121) -- WITHDRAWN

d. <u>Motion in Limine to Exclude Evidence of Last Five pages of Exhibit 22 to Deposition of Defendant Breckinridge</u> (ECF No. 122) -- WITHDRAWN

5. <u>Original Defendants' Motion in Limine to Exclude Testimony of Joseph N. Gompers and Any Evidence of Speculative Damages Arising from a Lost Business Opportunity at Trial</u> (ECF No. 381) -- DENIED

The original defendants filed a motion in limine to exclude testimony of Joseph N. Gompers and any evidence of speculative damages arising from a lost business opportunity at trial. Gompers is the plaintiffs' expert concerning the valuation of the port project at issue in this case. The defendants argue that this Court should exclude Gompers' testimony because it is both inadmissible under <u>Daubert v. Merrell Dow Pharm.</u>, 509 U.S. 579 (1993), and because it is inadmissible based under West Virginia damages law.

a. <u>Daubert</u>

The introduction of expert opinion testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 requires the trial judge to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). This "gatekeeping" obligation applies to all expert testimony, and not just the scientific testimony at issue in Daubert. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148 (1999). Importantly, "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note.

The first prong of this inquiry necessitates an examination of whether the reasoning and methodology underlying the expert's proffered opinion is reliable –- that is, whether it is supported by validation adequate to render it trustworthy. See Daubert, 509 U.S. at 590 & n.9. As the Supreme Court explained in Daubert, the subject of an expert's testimony must be scientific knowledge, meaning that it is grounded in the methods and procedures of science and consists of more than subjective belief or unsupported speculation. Id. at 590.

The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue. See id. at 591-92. To be relevant, the evidence must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Another aspect of relevancy is whether there is a sufficient "fit," or in other words "'whether expert testimony

proffered in the case is <u>sufficiently tied to the facts of the case</u> that it will <u>aid the jury</u> in resolving a factual dispute.'" Id. at 591 (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)) (emphasis added). Daubert delineates five factors to assist the trial court in determining whether an expert's testimony will assist the trier of fact: (1) whether the expert's technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error associated with a technique; (4) if standards control the use of a technique; and (5) if the technique is generally accepted within the scientific community. Id. at 593-94. While the Supreme Court stated that those factors are designed to assist courts, the Court also cautioned, "[t]he inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity -- and thus the evidentiary relevance and reliability -- of the principles that underlie a proposed submission." Id. at 594-95. Therefore, the trial judge's evaluation of whether expert testimony is admissible under Rule 702 is a flexible one, and the judge is given broad discretion in the determination of whether particular expert testimony is relevant and reliable. See Oglesby v. Gen. Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999); see also Kumho Tire, 526 U.S. at 152. Finally, it is important to recognize that, notwithstanding a trial court's "gatekeeping" function as to expert opinion, "vigorous cross-examination, presentation of contrary evidence, and careful

7

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 595.

The original defendants in this matter take issue with Gompers' methodology and the reliability of his methodology, rather than the relevancy of his testimony. They argue that Gompers' testimony is unreliable because it is based on speculative business plans. They assert that he did not perform any independent testing concerning the reasonableness or the reliability of the plans and instead, only relied on the estimates provided to him.

This Court, however, finds that the reasoning and methodology behind Gompers' reports is sufficient to satisfy the reliability prong of Daubert. Initially, Gompers explained the various techniques generally used to make a valuation of prospective businesses. Thereafter, Gompers explained that the use of the income based approach to valuation is the most appropriate method for this situation given the unique business of inland ports and the lack of any similar operations with published financial data for comparison. In completing his valuations, Gompers used the business prospectus completed on behalf of American Heartland Port by the plaintiffs, and the business plans completed on behalf of American Port Holdings by the original defendants. Using the numbers provided by plaintiffs, Gompers valued the business enterprise at $290,922,000.00 and using the numbers provided by the

original defendants, Gompers valued the business enterprise at 676,689,000.00.

As Gompers states, his reports are grounded on methodology commonly used in making valuations of prospective businesses. The numbers and data used were compiled by both the plaintiffs and the original defendants. As with any new business that has not yet come into existence, the data is based on the parties' research and estimations based on such research. The use of this data does not make Gompers' valuation methodology unreliable. The original defendants issue concerning Gompers' testimony is more about the data used by Gompers in his valuations, rather than his methodology. These issues with the data go more towards the weight of his testimony and not to its admissibility, which can be fully challenged on cross-examination. See Synergetics, Inc. v. Hurst, 477 F.3d 949, 955-56 (8th Cir. 2007) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") (citations omitted). Accordingly, this Court rejects the original defendants argument that Gompers' testimony would be unreliable. This Court notes, however, that it intends to give detailed instructions as to how the jury is to consider expert testimony, allowing the jury to decide what weight to give Gompers' testimony.

b. <u>West Virginia Law</u>

The original defendants next argue that Gompers' testimony must be excluded because its fails to meet the heightened burden of proof required for lost profit damages under West Virginia law. Under West Virginia law, "[a] new business may recover lost profits in a breach of contract action, but only if the plaintiff establishes the lost profits with reasonable certainty; lost profits may not be granted if they are too remote or speculative. Syl. pt. 2, <u>Cell, Inc. v. Ranson Investors</u>, 427 S.E.2d 447 (W. Va. 1992). While the court in <u>Cell</u> recognized that lost profits may be difficult to prove, it adopted the Restatement's view that "damages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like. <u>Id.</u> at 450 (citing Restatement (Second) of Contracts § 352 cmt. b (1981)).

The original defendants assert that Gompers' testimony does not establish lost profits testimony to a reasonable certainty. The original defendants state that there is no historical data to base the estimation of lost profits on and the estimation is not based on any market studies, statistical studies, or business records of similar projects. The original defendants compare this case with other cases, including <u>Cell</u>, for the contention that Gompers' testimony is inadmissible. This Court, however, finds that the case law cited by the original defendants is

distinguishable from the circumstances in this case, and further finds that, at this time, Gompers' testimony concerning lost profits is admissible.

First, the original defendants cite Cell in support of their proposition that Gompers' testimony is of the kind that is inadmissible to prove lost profits. In Cell, the plaintiff sued the defendant for lost profits arising out the defendant's alleged breach of a lease agreement. The plaintiff had intended to open a grocery store on the leased premises before the alleged breach occurred. The property was eventually leased to another individual, Mr. Barnhart, who did end up opening a grocery store on the site. At trial, the plaintiff's economist and Mr. Barnhart testified. The plaintiff's economist attempted to compare the profits of Mr. Barnhart's store to stores of a similar size and status as the plaintiff's proposed store. The West Virginia Supreme Court, however, found that such evidence was too speculative for a jury to base an award of lost profits, as Mr. Barnhart's store was not of the same size proposed by the plaintiff and there were too few similar stores as the one proposed by the plaintiff for an adequate comparison.

Second, the original defendants compare this case to Am. Safety Indem. Co. v. Stollings Trucking Co., Inc., No. 204-0752, 2007 WL 2220589 (S.D. W. Va. July 30, 2007). In Stollings, the court found that the plaintiff had failed to present sufficient evidence of lost profits to satisfy a motion for summary judgment

on the issue. The Stollings case dealt with lost profits alleged to be caused by a two year delay of planned coal mining operations for two underground mines. In response to the motion for summary judgment, the plaintiff presented only deposition testimony from two individuals concerning the profits lost as a result of the delay. Only one of these depositions provided an explanation of the lost profits. Specifically, the deponent stated that the estimation was based on extrapolating statistics from another operation on the same seam of coal. After the court reviewed this statistic in conjunction with other evidence of the coal seam's profits, however, the court found that the profits were too speculative and could not be used to base an award of lost profits, as the profits of the similar operation used for comparison fluctuated greatly from year to year.

Third, the original defendants cite Maher v. Cont'l Cas. Co., 76 F.3d 535 (4th Cir. 1996), in support of their argument to exclude Gompers' testimony. In Maher, the plaintiff owned a furniture company that was damaged in a fire. The plaintiff was unable to reopen his store after his insurance company delayed paying his claim arising from the fire. The district court found that the plaintiff's evidence of lost profits were too speculative to extend beyond the insurance company's delay in paying his claim, and the United States Court of Appeals for the Fourth Circuit affirmed this ruling in Maher. The plaintiff had attempted to have a Certified Public Accountant ("CPA") testify as to his future lost

profits based on the plaintiff's previous three years of sales. The Fourth Circuit stated that the district court did not abuse its discretion in limiting the CPA's testimony because the CPA did not take into account the economic situation of the store or do any post-fire surveys or comparisons to other similar stores. Further, the Fourth Circuit recognized that the CPA was not an expert in financial forecasting, but instead was only an expert in analyzing financial statements.

Gompers' testimony based on his expert report is distinguishable from the evidence attempted to be offered in the cases cited above by the original defendants. First, unlike in Cell, Gompers is not attempting to make a comparison between different ports, which are not similar to the one proposed by the parties in this action. Instead, he is using the financial data compiled by the different parties to make a valuation of the port. The two sets of data are based on the same port project. This Court assumes that such data compiled by the parties is based on research undertaken by the parties, and which, both parties stood behind in an attempt to acquire funding for the project. Second, the evidence and testimony to be offered by Gompers is much more reliable and thorough than that offered by the plaintiff in Stollings. Rather, than just a blanket statement that the valuation is based on a similar project, Gompers has provided detailed expert reports, using data provided by both the plaintiffs and defendants. Gompers has sufficiently explained how he used the

data and how he came to his ultimate valuations based on the different data.  Finally, Gompers is being offered as an expert concerning the valuation of businesses, unlike the expert in Maher. He is not basing his valuation on the financial statements of the port, which this Court realizes are not available due to the status of the project, but he is basing his valuation on extensive data provided by the parties, which includes but is not limited to detailed explanations of expected operating revenue and operating expenses.  While this Court is aware that lost profits must be established to a reasonable certainty, this does not require proof to absolute certainty.  Accordingly, after reviewing Gompers' expert report in conjunction with applicable case law, this Court finds that such testimony is admissible to prove lost profits. Such testimony is that of an expert in the field of valuation, and it is based on extensive economic and financial data provided and compiled by both parties to this action.  Any issue as to the accuracy of Gompers' testimony may be pursued by the original defendants on cross-examination.

6. <u>ArcelorMittal's Motion in Limine Regarding the Net Worth of ArcelorMittal</u> (ECF No. 384) -- DENIED AS MOOT

7. <u>ArcelorMittal's Motion in Limine Regarding Relationship to Foreign Entities</u> (ECF No. 385) -- DENIED AS MOOT

8. <u>ArcelorMittal's Motion in Limine Regarding Purported Contracts Entered into Between American Heartland Port and ArcelorMittal</u> (ECF No. 386) -- DENIED AS MOOT

9. ArcelorMittal's Motion in Limine Regarding Draft ArcelorMittal Memorandum (ECF No. 387) -- DENIED AS MOOT

10. ArcelorMittal's Motion in Limine and Memorandum of Law to Exclude Testimony by Plaintiffs' Damages Expert Joseph N. Gompers and Any Evidence of Speculative Damages Arising from a Lost Business Opportunity at Trial (ECF No. 388) -- DENIED AS MOOT

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to counsel of record herein.

DATED: June 30, 2014

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE