IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


AMERICAN HEARTLAND PORT, INC.,
JO LYNN KRAINA, SHELLEY REED
and MISTY SHANNON,

        Plaintiffs,

v.                                           Civil Action No. 5:11CV50
                                                          (STAMP)
AMERICAN PORT HOLDINGS, INC.,
a Delaware corporation,
DANIEL L. DICKERSON, ANDREW S. FELLOWS,
STANLEY BALLAS, JAMES MARTODAM and
JAMES C. BRECKINRIDGE, individually,
PATRICK NICHOLAS DICARLO, an individual,
CHANNEL POINT PARTNERS, a corporation,
ALLIED INVESTMENT PARTNERS PJSC,
a foreign corporation and
ARCELORMITTAL WEIRTON, LLC, a corporation,

        Defendants.


**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFFS' MOTION FOR NEW TRIAL**
**AND STAYING PLAINTIFFS' MOTION TO**
**VACATE THE BILL OF COSTS PENDING APPEAL**


I.  Procedural History[1]

    The plaintiffs, American Heartland Port, Inc. ("American

Heartland"), Jo Lynn Kraina ("Kraina"), Shelley Reed ("Reed"), and

Misty Shannon, brought their original complaint against defendants

_____

    [1]This opinion provides, as this Court has previously done, a
condensed version of the facts that are relevant to the motions at
issue here.  However, the full factual background of this civil
action can be found in this Court's prior memorandum opinion and
order granting the original defendants' motion for partial summary
judgment and granting ArcelorMittal Weirton, LLC's ("Arcelor
Mittal") motion for summary judgment.  See ECF No. 499.

Daniel Dickerson, Andrew S. Fellows, Stanley Ballas,[2] James Martodam, James C. Breckinridge, and American Port Holdings, Inc. ("original defendants") on the basis of diversity jurisdiction under 28 U.S.C. § 1332. In their complaint, the plaintiffs alleged claims of fraud and misrepresentation, breach of contract, equitable estoppel, misappropriation of corporate assets, unjust enrichment, breach of fiduciary duties as to all individually named defendants, legal malpractice and breach of fiduciary duty by defendant James Breckinridge, and interference with business opportunities and prospective advantage. As relief, the plaintiffs sought compensatory damages in excess of $75,000.00, disgorgement of any unjust enrichment, punitive damages, and attorney's fees.

On the day before trial was set to begin concerning the plaintiffs' original complaint, the parties notified this Court that they reached a tentative settlement. The parties requested this Court to stay the case for six months due to uncertainties concerning the settlement. After a hearing concerning this

---

[2]The plaintiffs, by counsel, at the pretrial conference held in this matter stated that they abandoned all claims against original defendant Stanley Ballas. The plaintiffs also stated at a subsequent pretrial conference that they abandoned all additional claims in their amended complaint against original defendant James Martodam. Further, this Court granted defendant DiCarlo's motion to dismiss (ECF No. 327), and plaintiffs voluntarily dismissed claims against Allied Investment PJSC (ECF No. 372). Accordingly, all references below to the original defendants include only Daniel Dickerson, Andrew S. Fellows, James C. Breckinridge, and American Port Holdings.

notification, this Court entered an order staying the proceedings until April 29, 2013. <u>See</u> ECF No. 164.

On April 3, 2013, the plaintiffs filed a motion seeking this Court's acknowledgment that the parties withdrew and voided the tentative settlement as of April 29, 2013. Further, the plaintiffs requested that this Court require the original defendants to supplement discovery and provide the plaintiffs with a report concerning the status of the settlement. <u>See</u> ECF No. 167.

As a result of certain orders entered by this Court and notices of dismissal entered by the parties,[3] the following counts remained part of this action at trial: (1) Count I, plaintiffs' claim for fraud and misrepresentation against the original defendants; (2) Count II, plaintiffs' breach of contract claim against the original defendants; (3) Count III, plaintiffs' equitable estoppel claim against the original defendants; (4) Count VI, plaintiff's claim for breach of fiduciary duties against the original defendants; (5) Count VII, plaintiffs' claim for legal malpractice and breach of fiduciary duty against James Breckinridge; (6) Count VIII, plaintiffs' claim for tortious interference with plaintiffs' business opportunities and prospective advantage against the original defendants and

---

[3]Based on (1) the plaintiffs' notices of dismissal either in writing or made at hearings on this matter and (2) various rulings made by this Court, the only additional defendant that remained subject to any counts in this action was ArcelorMittal.

ArcelorMittal; (7) Count IX, plaintiffs' claim for violation of the doctrine of good faith and fair dealing in working with others to sabotage the settlement agreement against the original defendants and ArcelorMittal; (8) Count X, plaintiffs' claim under the West Virginia Uniform Fraudulent Transfers Act ("WVUFTA") (W. Va. Code § 40-1A-4) and under a theory of accomplice liability against the original defendants and ArcelorMittal; and (9) Count XI, plaintiffs' claim for breach of the duty of loyalty against the original defendants.

Upon completion of discovery, the original defendants filed a partial motion for summary judgment and ArcelorMittal filed a motion for summary judgment as to all counts against it. See ECF Nos. 350 and 351, respectively. Following oral argument, this Court granted the original defendants' motion for partial summary judgment and ArcelorMittal's motion for summary judgment. ECF No. 499.

After this Court granted the original defendants and Arcelormittal's motions, this civil action proceeded to trial regarding the remaining issues. The jury returned a verdict (1) in favor of defendants on all claims against them, and (2) in favor of plaintiffs regarding the original defendants' counterclaims for defamation.[4] ECF Nos. 496 and 497, respectively. Since then, the

---

[4]In their answer to the complaint, defendants American Port Holdings, Inc., Daniel L. Dickerson, Andrew S. Fellows, Stanley Ballas, James Martodam, and James C. Breckinridge asserted

plaintiffs filed several motions.  First, the plaintiffs filed a
motion for new trial.  ECF No. 502.  The original defendants and
Arcelormittal then filed their response in opposition to the motion
for new trial.  ECF No. 519.  Second, the plaintiffs filed both
objections to the bill of costs and a motion to vacate the bill of
costs filed by the Clerk of the Court.  ECF Nos. 518 and 516,
respectively.  Finally, plaintiffs filed a notice of appeal
regarding this Court's memorandum opinion granting the motion for
partial summary judgment and Arcelormittal's motion for summary
judgment.  ECF No. 499.  In their appeal, plaintiffs proceed <u>pro
se</u>.[5]  For the reasons provided below, this Court denies plaintiffs'

---

counterclaims against all plaintiffs.  ECF Nos. 6 and 242.  They
collectively alleged claims of slander, and Martodam claimed an
invasion of privacy.  They all sought both compensatory and
punitive damages.  As mentioned earlier, claims against Martodam
and Ballas were voluntarily dismissed before trial and thus, the
invasion of privacy counterclaim terminated.  Later, the original
defendants made a motion under Federal Rule of Civil Procedure 50
on July 8, 2014, seeking judgment as a matter of law regarding
plaintiffs' claims and the defendants' counterclaims in their
favor.  This Court denied the motion regarding plaintiffs'
following claims: (1) fraud, (2) unjust enrichment, (3) tortious
interference, (4) misappropriation of assets, and (5) legal
malpractice and breach of fiduciary.  Further, regarding the
original defendants' counterclaim, this Court granted the motion in
part for counterclaimants Dickerson and American Port Holdings, to
proceed on their defamation counterclaim, but only against
plaintiffs Kraina and American Heartland.  This Court denied
Fellows and Breckinridge's counterclaims for defamation to proceed
pursuant to Rule 50.

[5]<u>Pro se</u> describes a person who represents himself in a court
proceeding without the assistance of a lawyer.  <u>Black's Law
Dictionary</u> 1416 (10th ed. 2014).

motion for a new trial and stays plaintiffs' motion to vacate the bill of costs.[6]

## II. <u>Facts</u>[7]

In September 2008, Kraina was employed as a consultant for Tantara Communications, LLC ("Tantara"). At that time, Tantara wanted to provide a communications system for a proposed port in Weirton, West Virginia on the Ohio River. In February 2009, Tantara abandoned the communications project and advised Kraina that it no longer needed her as a consultant. However, Kraina and Reed still considered the port project feasible and together developed a business plan for it. They presented the business plan to the West Virginia Public Port Authority and regional cities along the Ohio River.

Kraina then entered into a joint venture or partnership with Dickerson, Fellows, Ballas, and Martodam, all former members of Tantara, to begin planning and constructing the port. Kraina also brought in Breckinridge to allegedly serve as the partnership's attorney. The plaintiffs and original defendants were all designated as part of the board of directors for the partnership, which they agreed to call "The American Heartland Port, Inc."

---

[6]Plaintiffs' counsel, Patrick S. Cassidy, also filed a motion to withdraw as counsel. ECF No. 515. That motion is addressed by a separate order.

[7]For the purposes of this opinion, this Court adopts, for the most part, the facts as set forth by the plaintiffs in the amended complaint. ECF No. 229.

American Heartland Port continued the research, development, and promotion of the port project. Dickerson allegedly acquired funding for the project through Allied Investment PJSC ("AIP") and its executive Patrick DiCarlo.[8] At a presentation with AIP in July 2009, which Kraina believed was to seek funding for American Heartland Port, Dickerson also sought funding for Tetherless Communications, LLC ("Tetherless"). Dickerson asserted that he and Fellows planned to prepare Tetherless as a successor to Tantara. Thereafter, the plaintiffs believed that Dickerson was attempting to take control of American Heartland Port and work to promote his own company and interests over those of American Heartland Port.[9] Based on the advice of Breckinridge, the plaintiffs incorporated American Heartland Port less than one week after the presentation to AIP.

In August 2009, the original defendants resigned from American Heartland Port. Days later, they incorporated a new company called American Port Holdings, Inc. The plaintiffs assert that after the original defendants formed American Port Holdings, the original defendants misappropriated a feasibility study done by American Heartland Port. Further, they claim that the original defendants

_____

[8]The plaintiffs assert that DiCarlo agreed to obtain funding from AIP if given an equity share in American Heartland Port.

[9]The plaintiffs assert that Dickerson attempted to remove them from the board of directors and told them not to incorporate American Heartland Port.

approached many of American Heartland Port's contacts, representing that they were the successor to American Heartland Port.

The plaintiffs then instituted this action, asserting claims arising out of the original defendants' actions in conjunction with the port project. As stated above, on the day before trial was set to begin concerning the plaintiffs' original complaint, the parties notified this Court that they reached a tentative settlement, and requested that this Court stay the case for six months due to uncertainties concerning the settlement. After holding a status conference concerning the tentative settlement, this Court stayed the case pending the completion of the tentative settlement. The tentative settlement agreement was contingent on certain events occurring. The original defendants, at the time of the tentative settlement discussions, had an agreement of purchase and sale with ArcelorMittal for land it owned. The original defendants intended to use the land for the port project. Although the original defendants were in default of the agreement of purchase and sale at the time of the tentative settlement discussions, ArcelorMittal agreed to extend the time to cure the default so that funding could be secured for the sale. The settlement of this case depended on the sale actually occurring, which would provide the original defendants with funds to resolve the claims. Ultimately, the original defendants did not cure their default and ArcelorMittal terminated the agreement of purchase and sale. The plaintiffs then

sought and obtained permission to file an amended complaint, adding additional claims based on alleged actions and events occurring within the months after the parties notified this Court of the tentative settlement. This case then proceeded to trial, at the conclusion of which the jury returned a verdict (1) in favor of the original defendants on the complaint and Arcelormittal, and (2) against defendants American Port Holdings and Daniel Dickerson on their counterclaim. Following the trial, the plaintiffs now file a motion for new trial and a motion to vacate the bill of costs submitted by the Clerk of the Court.

## III.  <u>Applicable Law</u>

Under Federal Rule of Civil Procedure 59(a), a court "may, on motion, grant a new trial on all or some of the issues--and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." The movant must timely file the motion for new trial within 28 days of the entry of judgment. Fed. R. Civ. P. 59 (b). When determining whether to grant a new trial under Rule 59(a), this Court is "permitted to weigh the evidence and consider the credibility of witnesses." <u>Cline v. Wal-Mart Stores, Inc.</u>, 144 F.3d 294, 301 (4th Cir. 1998) (citation omitted). This Court, however, may only grant a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice,

even though there may be substantial evidence which would prevent the direction of a verdict." <u>Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.</u>, 99 F.3d 587, 594 (4th Cir.1996).

IV. <u>Discussion</u>

A. <u>Motion for New Trial</u>

In their motion for a new trial, plaintiffs allege five reasons why this Court should grant their motion. Those reasons are discussed below. As this Court will explain, the plaintiffs' motion for a new trial is denied.

1. <u>Weight of the Evidence</u>

First, plaintiffs claim that the verdict in its entirety is against the weight and preponderance of the evidence. Although they submit that all of the jury findings are against the weight of the evidence, plaintiffs maintain specific issues that they believe weigh against the evidence presented. Regarding their legal malpractice claim against Breckinridge, plaintiffs allege that their claim contained evidence that clearly demonstrated that Breckinridge, as the plaintiffs' attorney, had a conflict of interest. Specifically, they believe that Breckinridge testified three times that he had a conflict of interest. ECF No. 503 *4. Thus, the jury should have returned a verdict in their favor in the malpractice claim.

Next, concerning their unjust enrichment claim, plaintiffs believe that the evidence clearly shows that the original

defendants' enrichment came at the expense of the plaintiffs' contributions and contracts formed at the early stages of the port project. Finally, regarding their tortious interference claim, plaintiffs assert that "too much evidence was presented for a reasonable jury" to find against them. Specifically, plaintiffs believe that they proved all of the elements for their claim at trial. Further, they argue that the original defendants' actions, such as engaging in complex transactions[10] within a few days of resignation, should have easily convinced the jury that plaintiffs proved their claim.

Following plaintiffs' motion for a new trial, the original defendants and ArcelorMittal filed their response in opposition. Regarding the malpractice claim, they argue that plaintiffs misconstrue the facts and evidence. They first assert that Breckinridge never stated he had a conflict of interest. Rather, they claim he testified that he "could see" how someone could construe his circumstances as a conflict of interest. Further, they believe that both plaintiffs and Breckinridge caused plaintiffs' alleged damages, here annoyance and inconvenience damages. Accordingly, defendants assert that the evidence presented properly aligns with the jury's verdict.

---

[10]Specifically, plaintiffs name the following transactions: "seeing an attorney, incorporating, and getting a confidentiality agreement." ECF No. 503 *5.

Second, concerning the unjust enrichment claim, the original defendants and ArcelorMittal argue that the evidence shows they never received funding and, thus, there was no enrichment at the cost of the plaintiffs. Because the evidence clearly established that they took nothing from the plaintiffs, the original defendants and ArcelorMittal believe that the weight of the evidence supports the jury's verdict. Finally, the original defendants and ArcelorMittal assert that, regarding the tortious interference claim, plaintiffs presented nothing more than suggestions or inferences as evidence. Therefore, they claim the weight of the evidence justified the jury's verdict.

   a.   Legal Malpractice Claim

In a legal malpractice action under West Virginia law, the plaintiff is required to prove the following: "(1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client." McGuire v. Fitzsimmons, 475 S.E.2d 132, 136 (W. Va. 1996) (citing Keister v. Talbott, 391 S.E.2d 895, 898-899 (W. Va. 1990)); see also Calvert v. Scharf, 619 S.E.2d 197, 198 (W. Va. 2005). Further, West Virginia law generally provides that "[w]here, in a trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless

believed to be plainly wrong."  Syl. Pt. 2, <u>French v. Skinford</u>, 54

S.E.2d 38 (W. Va. 1948).

In this civil action, the parties presented conflicting expert

testimony regarding the malpractice claim.  This means that the

jury had to resolve the presented conflict.  This was simply a

classic jury issue resolved by the jury in favor of the original

defendants and ArcelorMittal.  Further, evidence from the trial

does not show that Breckinridge admitted to having a conflict of

interest.  The plaintiffs claim that he admitted on three occasions

that he had a conflict of interest.  However, the evidence at trial

fails to show such statements.  In fact, when asked directly if he

had a conflict, Breckinridge flatly responded, "No."  Regarding

this claim, the plaintiffs fail to show how the jury verdict went

against the weight of the evidence presented.

       b.   <u>Unjust Enrichment Claim</u>

Under West Virginia law, unjust enrichment occurs when:

> [one] has and retains money or benefits which in justice
> and equity belong to another . . . .  The benefit may be
> an interest in money, land, chattels, or choses [sic] in
> action; beneficial services conferred; satisfaction of a
> debt or duty owed by him; or anything which adds to his
> security or advantage.

<u>Dunlap v. Hinkle</u>, 317 S.E.2d 508 n.2 (W. Va. 1984) (citing

<u>Commercial Fixtures and Furnishings, Inc. v. Adams</u>, 564 P.2d 773

(Utah 1977); <u>see also</u> <u>Annon v. Lucas</u>, 185 S.E.2d 343, 352 (W. Va.

1971) (recognizing that relief for unjust enrichment is provided

where "property which has been acquired by fraud, or . . . it is

against equity that it should be retained by the person holding it").

Generally, a person who is unjustly enriched at the expense of another is required to make restitution. Restatement (First) of Restitution § 1 (1988). In West Virginia, "restitution damages from a claim of unjust enrichment are measured in terms of the benefit the plaintiff conferred to the defendant." Bright v. QSP, Inc., 20 F.3d 1300, 1311 (4th Cir. 1994)(quoting Dunlap v. Hinkle, 317 S.E.2d 508, 512 (W. Va. 1984)). In addition, "a person may be unjustly enriched not only where he receives money or property but also where he otherwise receives a benefit. He receives a benefit . . . where he has saved expense or loss." Id. (quoting Prudential Ins. Co. v. Couch, 376 S.E.2d 104, 109 (W. Va. 1988)); see also LaPosta Oldsmobile, Inc. v. Gen. Motors Corp., 426 F. Supp. 2d 346, 356 (N.D. W. Va. 2006). However, "there is nothing inherently unjust about enrichment," meaning it must be against good conscience and unjust for the party to keep the benefit. In re Worldcom, Inc., No. 06CV2134, 2010 WL 334980 at *6 (S.D.N.Y. Jan. 29, 2010) (internal citations omitted).

Looking at the record, the jury's verdict does not go against the weight of the evidence presented. According to the evidence at trial, the plaintiffs do not seem to have provided evidence concerning the value and exact benefit received. Further, as the original defendants and ArcelorMittal point out, Rick Simon

testified that the plans for the port were neither his unique and novel idea nor a protected interest belonging solely to him. Accordingly, the parties presented conflicting evidence regarding this claim. Therefore, the matter was within the province of the jury to decide, and the evidence does not outweigh the jury's verdict.

     c.   <u>Tortious Interference</u>

Under West Virginia law, a claim of tortious interference requires the plaintiff to show the following: "(1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Syl. Pt. 2, <u>Torbett v. Wheeling Dollar Sav. & Trust Co.</u>, 314 S.E.2d 166 (W. Va. 1983).

Here, the plaintiffs claim that "too much evidence" was presented for a reasonable jury to find for the original defendants and ArcelorMittal. ECF No. 503 *5. However, the trial record demonstrates that the weight of the evidence presented does not outweigh the jury's verdict. Looking at the record presented at trial, it appears that contrary to plaintiffs' claim, one of the plaintiffs admitted to not having an expectation of an interest or ownership in the proposed project or entities associated with it. As seen with the above discussed claims, the parties presented conflicting evidence and thus the issue remained in the "province

of the jury." Syl. Pt. 2, <u>Skinford</u>, 54 S.E.2d at 38. Because neither plain error nor a verdict against the weight of the evidence exists, this Court denies plaintiffs' motion for a new trial.

B.  <u>Court Error</u>

Plaintiffs next contend that this Court erred in five ways. Those arguments are presented below. For the reasons stated, this Court does not find any error regarding plaintiffs' assertions warranting a new trial. Thus, this Court denies plaintiffs' motion for a new trial.

1.  <u>Error in Cut-Off Date</u>

First, plaintiffs claim that this Court erred by preventing plaintiffs from rebutting the original defendants' claim of poverty. Specifically, this Court determined that the appropriate cut-off date for testimony and other presentation of evidence at trial would be May 21, 2013. ECF No. 465. Plaintiffs claim that this "arbitrary" cut-off date hindered their ability to rebut the original defendants' claim of poverty. Because of this, plaintiffs assert that their inability to present evidence past the cut-off date proved prejudicial in the trial, and resulted in a jury verdict in favor of the defendants.

This Court finds no error in using the established cut-off date. First, this Court determined the cut-off date based on when the relevant transactions and facts of the case occurred. Second,

the date was selected based on possible dates that the parties each presented to this Court. Third, during trial, this Court repeatedly instructed the jury to disregard any testimony or discussion of transactions occurring after the cut-off date, whether witnesses for the defendants or plaintiffs testified about them. Therefore, this Court finds no error in the use of the cut-off date.

2.   Refusal to Modify Protective Order

Plaintiffs next claim that this Court erred in refusing to modify several protective orders.[11]  The plaintiffs here argue that this refusal to grant plaintiffs unfettered access to evidence that they claim was relevant to this civil action hindered their prosecution of the case.

Regarding protective orders, "[c]ourts have the inherent power to modify protective orders, including protective orders arising from a stipulation by the parties." SmithKline Beecham Corp. v. Synthon Pharmaceuticals, Ltd., 210 F.R.D. 163, 166 (M.D. N.C. 2002) (citations omitted).  In determining whether to modify a protective order, a court may consider a number of factors including, "the reason and purpose for a modification, whether a party has alternative means available to acquire the information, the type of protective order which is at issue, and the type of materials or

_____

[11]For a complete listing and description of the orders, see this Court's memorandum opinion and order denying plaintiffs' motion to modify the protective orders.  ECF No. 485.

documents which are sought." Id. Regarding the burden of proof, "[t]he party seeking to modify a protective order bears the burden of showing good cause for the modification." Id. (citations omitted).

As this Court noted in its memorandum opinion and order regarding the protective orders, the plaintiffs failed to carry their burden of showing good cause for the modification. The same is true now in their most recent filing. Other than conclusory statements of alleged error, the plaintiffs offer no explanation as to how this Court erred. Further, several of the items involved, including proof of a settlement, are inadmissible under Rule 408 of the Federal Rules of Evidence. As provided above, this Court has the inherent power to modify protective orders, and plaintiffs must meet their burden of showing good cause. The plaintiffs still have not done so. Thus, this Court rejects plaintiffs' claim of error regarding the protective orders.

### 3.  Defendants' Failure to Produce Evidence

Next, plaintiffs claim that this Court erred in preventing plaintiffs from introducing evidence of the original defendants and ArcelorMittal's failure to produce certain evidence during discovery. The plaintiffs assert that this failure to produce certain items in discovery demonstrates the fraudulent activity of the original defendants and ArcelorMittal. The plaintiffs point to several items they claim were never provided in discovery, which

included an alleged contract, emails, and updated letters. However, this Court notes that the plaintiffs never filed a motion to compel regarding those items. Federal Rule of Civil Procedure 37 authorizes the "basic motion for enforcing discovery obligations," meaning a motion to compel. <u>See</u> 8B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2285 (3d ed. 1998). In this civil action, plaintiffs failed to notify this Court or file a motion about their request for these specific items. Thus, this Court did not err by allegedly preventing plaintiffs from introducing evidence of defendants' failure to produce documents.

4. <u>Admission of Exhibit No. 237</u>

Plaintiffs assert that this Court erred by preventing plaintiffs from admitting a certain exhibit, specifically Exhibit No. 237. This exhibit, an email containing talking points for a meeting, was dated September 22, 2013. This Court denied admitting this exhibit into evidence because the cut-off date for evidence is May 21, 2013. <u>See</u> ECF No. 465. This Court deemed that any evidence from beyond the cut-off date would not be relevant under Federal Rule of Evidence 401 and even if relevant would be excludable under Federal Rule of Evidence 403. Because this email is dated past the cut-off date, this Court did not err in finding the exhibit inadmissible.

5.    <u>Tentative Settlement Agreement</u>

Finally, plaintiffs' last ground for error pertains to a tentative settlement agreement by the parties.    The plaintiffs claim this Court erred by preventing them from introducing evidence of a tentative settlement agreement.    Federal Rule of Evidence 408 clearly provides that settlement negotiations as evidence generally are inadmissable.    The plaintiffs sought to introduce evidence of a tentative settlement agreement, and this Court denied admitting such evidence.    Thus, pursuant to the Federal Rules of Evidence, this Court sees no error in prohibiting evidence of the settlement agreement.

C.    <u>Motion To Vacate Bill of Costs</u>

In addition to their motion for a new trial, plaintiffs filed a motion to vacate the bill of costs submitted by the Clerk of the Court.    ECF No. 516.    Plaintiffs seek to deny the billing and taxing of costs attributed to ArcelorMittal.    Plaintiffs cite to 28 U.S.C. § 1920(4) as grounds for denying the bill.    Specifically, plaintiffs claim that several groupings of copies and transcripts were not "necessarily obtained" for use in the case, as required under 28 U.S.C. § 1920(4).    Further, plaintiffs also point to other fees, some they claim are paid to the state bar, and are thus contrary to the statute.

The original defendants and ArcelorMittal filed a response to this motion.    ECF No. 521.    They argue that plaintiffs'

interpretation of "necessarily obtained" does not require that the copies, depositions, and other materials actually be used. Rather, they assert that the items must be obtained for use in the case, whether or not they are actually used. Further, they also point to Rule 54(d) of the Federal Rules of Civil Procedure, providing that absent a federal statute, court order, or otherwise, costs other than attorney's fees should be awarded to the prevailing party.

However, plaintiffs have since filed two <u>pro se</u> notices of appeal, appealing this Court's (1) judgment in favor of the original defendants and ArcelorMittal, and (2) memorandum opinion and order granting Patrick Nicholas DiCarlo's motion to dismiss. <u>See</u> ECF Nos. 508 and 505, respectively. Because these matters remain pending on appeal, this Court believes that it would be premature to decide the bill of costs at this time. In the interest of judicial economy, this Court finds that holding the plaintiffs' motion to vacate the bill of costs in abeyance pending the resolution of any appeal of the underlying jury verdict or other resolution of this civil action is the proper course of action at this time. <u>See Reed v. Health and Human Services</u>, 774 F.2d 1270, 1277 (4th Cir. 1985) (holding that a district court may defer ruling on a petition for attorney's fees pending a final resolution of the merits). Therefore, this Court will stay the plaintiffs' motion to vacate the bill of costs pending the final

resolution of any appeal in this matter or other final resolution thereof.

## V. Conclusion

For the reasons provided above, the plaintiffs' motion for a new trial is DENIED. In addition, the plaintiffs' motion to vacate the bill of costs is STAYED pending the final resolution of any appeal in this matter.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     October 8, 2014


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE